## LUTHER PAUL MURRIS v. STATE.

No. 24694. March 8, 1950.

No attorney of record on appeal for appellant.

*Stewart W. Hellman,* Criminal District Attorney, *W. H. Tolbert* and *John E. McLean,* Assistants Criminal District Attorney, Fort Worth, and *George P. Blackburn,* State's Attorney, Austin, for the state.

GRAVES, Judge.

Appellant was charged with the murder with malice of Beulah Childs, and by the jury convicted and assessed a term of 35 years in the penitentiary, and he appeals.

The facts show that the parties are Negroes, and that appellant was enamored of the deceased, a married woman with a husband and children living. The parties had some talk relative to the deceased getting a divorce from her husband and marrying the appellant. Eventually it seems that the deceased wearied of her contemplated relations with appellant and was avoiding

him, he pursuing her at times. On the night of the alleged offense, March 22, 1946, he met her on a street in Fort Worth, and desiring to talk to her, they stepped away from the street light and into the darkness where some wood had been piled; that they had some argument relative to their contemplated marriage; and he finally struck her over the head with a piece of wood many times, crushing her skull and beating the bones of the skull into the brain of this unfortunate woman; and upon discovery and near to the body was found a stick of wood with hair on it which was similar to that of a colored person, as well as blood thereon. This wood was introduced in evidence and was described as being about four feet long, appearing to be a limb off a tree or piece of cordwood, with approximately a width of 7 inches at one end and 8 inches at the other. There was blood where the stick was found, and the woman evidently died at such point. Appellant then repaired to another woman's house with whom he had been living and spent the night with her. He finally wound up in Kansas City, where he was apprehended about three years after the tragedy.

Appellant made a full confession, both in Kansas City and in Fort Worth, as well as taking the stand and testifying about the whole matter. His claim was that when the deceased refused to get a divorce and marry him, he got so mad that he did not know what happened, but he knew he did hit the deceased and that she fell back on the wood. He then left and did not know that she was dead until he was finally apprehended in Kansas City and thus informed, although he knew the "law" was looking for him, but he thought it was on account of the fight he had with her. He did not go back to see whether or not he had killed her.

In his written statement he claimed to have struck and knocked the woman down twice and then walked off and left her.

There are but two bills of exception in the record, the first bill relating to a purported statement made by the assistant district attorney to the jury. The trial court qualifies such bill by saying that he heard no such statement made before the jury and that he heard all the argument of the attorneys. This qualification was accepted by appellant and we see no error shown in said bill.

Bill No. 2 complains because of certain testimony of the undertaker who handled the body of the deceased on or about

March 22, 1946. After stating his qualifications as a student of embalming school and the study of anatomy of the human body and various semi-medical courses and the study of chemistry, he graduated from such school in 1937, and from that time until 1946, his profession was embalming; that he had handled many bodies upon which extreme violence had been used. He stated that the body of the deceased was found with the head crushed and mangled with a number of holes in the skull and portions of the brain protruding therefrom; that there were some five or six holes in the hollow through the head at different angles with the skull being crushed. The witness was then asked what in his opinion caused the death of the deceased. This was objected to on the ground that the witness was not qualified to give medical testimony along those lines. The trial court permitted him to answer as follows:

"Well, in my opinion, it was from hemorrhage of the brain, from the power of the blow that she got in there, which crushed the skull, and the skull was found mangled around in the head, and either one of the blows would cause death because of the loss of blood and the destroying that circulation up there among the brain."

The bill shows, however, that upon cross examination of this witness, appellant's attorney asked the following question:

"Q. Jim, in your experience there and in your work as an undertaker, isn't it a fact that one blow such as those you testified to, could cause death—one single blow? A. It is possible."

Appellant, in his confession, said that he struck the deceased two blows with this wood. In his testimony upon the stand he testified that he struck but one blow.

We think the witness was qualified from his statement of his education and experience, as well as his observation of the body, to give his opinion as to what caused the death. We also think that if any error was shown in his direct testimony, the same was cured in the showing by appellant's attorney that one such blow could have caused the death of this woman.

Finding no error in the record, the judgment will be affirmed.